UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Chris Gregerson,

        Plaintiff,

        v.

Vilana Financial, Inc., a Minnesota
Corporation; Vilana Realty, Inc., a
Minnesota Corporation; and Andrew
Vilenchik, a private individual,

        Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 06-1164 ADM/AJB

_____

Chris Gregerson, *pro se.*

Boris Parker, Esq., Saliterman & Siefferman, P.C., Minneapolis, MN, on behalf of Defendants.
_____

## I. INTRODUCTION

On October 27, 2006, oral argument before the undersigned United States District Judge was heard on Defendants Vilana Financial, Inc. ("Vilana Financial"), Vilana Realty, Inc. ("Vilana Realty"), and Andrew Vilenchik's ("Vilenchik") (collectively "Defendants") Motion for Injunctive Relief ("Motion") [Docket No. 31]. For the reasons set forth herein, Defendants' Motion is denied.

## II. BACKGROUND

This case began in Hennepin County Conciliation Court as a matter asserting the use, without paying a licensing fee, of a single photo taken from Gregerson's web site. Parker Aff. [Docket No. 30] Ex. D. Now after a bout of litigation fever, the case is in federal court with counterclaims for defamation and trademark infringement and requests for injunctive relief. The factual background of this case is described more fully in the Court's August 16, 2006 Order

[Docket No. 21] and is incorporated by reference. Briefly, Plaintiff Chris Gregerson ("Gregerson") has sued Defendants for copyright infringement on the basis that Defendants took a photograph from Gregerson's web site and used it in advertisements without permission from Gregerson and without paying for the photograph. Compl. [Docket No. 1]. Defendants have counterclaimed on the basis that web sites created by Gregerson are defamatory, interfere with Defendants' employees and customers, and infringe Defendants' trademarks. Answer [Docket No. 22].

In their Motion, Defendants ask the Court "for a preliminary injunction ordering the Plaintiff to cease and desist from the use of Defendants registered Service/Trade Marks and Trade Names, 'Vilana,' 'Vilana Financial,' 'Vilana Realty,' 'Vilanafinancial.com,' and derivatives thereof." Mot. at 1. Defendants aver that Gregerson has directly used Defendants' service/trade marks and names as a link and in subject lines on his web sites www.cgstock.com and www.phototour.minneapolis.mn.us, and has also hidden them in the metatags of his web sites. Mem. in Supp. [Docket No. 33] at 4-5. Defendants aver that search engines such as Google and Yahoo "read" metatags and use them to "classify" a web site. Id. at 5. Thus, when an internet user types the term "Vilana" into the Google search engine, the user will receive a list of web sites that includes cgstock.com, with cgstock.com often appearing near the top of the list. Id. at 5-7; see Vilenchik Aff. [Docket No. 34] ¶ 16. Defendants also claim that Gregerson has used their service/trade marks and names in the address and metatags of "mirror sites." Mem. in Supp. at 6. Finally, Defendants allege that Gregerson uses Defendants' service/trade marks and names in his educational materials for teaching HTML to students in community education. Id.

At oral argument, the Court requested Gregerson to obviate the need for granting

2

injunctive relief by voluntarily making alterations to his web site. By letter, Gregerson avers that he made three recent changes to this web site: (1) he removed all comments that refer to a secretary or girlfriend of Andrew Vilenchik; (2) he added the following disclaimer in large red letters to the top of his web site: "This webpage is a criticism of Vilana Financial, Inc. and it's [sic] president, Andrew Vilenchik. It is not endorsed by or affiliated with Vilana Financial, Inc. or Andrew Vilenchik in any way."; (3) he edited his web site's metatag keywords and descriptions to more explicitly state the nature of the web site as a criticism of Vilana Financial and Andrew Vilenchik.

### III. DISCUSSION

Four factors are balanced to determine whether injunctive relief is warranted: (1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between the harm to the movant and the harm that the relief would cause to the other litigants; and (4) the public interest. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citing Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). "A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." Watkins, 346 F.3d at 844 (internal citation omitted).

Defendants argue that they are entitled to injunctive relief because all four factors weigh in their favor. Defendants argue that they are likely to succeed in establishing that Gregerson has violated the Lanham Act, 15 U.S.C. § 1125(a), because they have trade/service marks and names that are entitled to protection, and because Gregerson has used his web sites in an infringing manner that has created initial interest confusion. Defendants argue that the balance

of harm weighs in their favor, as ordering Gregerson to refrain from using Defendants' service/trade marks and names in his web sites will cause no harm to Gregerson and will stop irreparable harm to Defendants in the form of erosion of Defendants' good will, diversion of Defendants' customers, and disparagement of Defendants' business.  Finally, Defendants argue that it is in the public interest to enforce the trademark laws, and to preserve the good will, reputation, and intellectual property of businesses that provide jobs and income to the community.  Gregerson opposes Defendants' Motion largely on First Amendment grounds.

Defendants aver that the most analogous case is Faegre & Benson, LLP v. Purdy, 367 F. Supp. 2d 1238 (D. Minn. 2005).[1]  In Purdy, plaintiffs claimed that defendant's use of plaintiffs' trademarks in the metatags of his web sites violated the court's previous order enjoining defendant from using any trademark that was identical or confusingly similar to plaintiffs' protected marks.  367 F. Supp. 2d at 1240-41, 1246.  Plaintiffs argued "that use of a competitor's trademark in a web page's metatags with the purpose of diverting internet users from their intended web site destination constitutes trademark infringement under the Lanham Act."  Id. at 1246 (citing Brookfield, 174 F.3d at 1062-66).  Defendant responded that his use of plaintiffs'

---

[1] Several cases cited by Defendants are significantly different, as they involve initial interest confusion in the context of competing products.  See Promatek Indus., Ltd. v. Equitrac Corp., 300 F.3d 808, 812-13 (7th Cir. 2002); Brookfield Commc'ns v. W. Coast Entm't Corp., 174 F.3d 1036, 1062-65 (9th Cir. 1999); J.K. Harris & Co. v. Kassel, 253 F. Supp. 2d 1120, 1124-27 (N.D. Cal. 2003).  Courts in those cases found initial interest confusion actionable because defendant improperly benefitted from the goodwill plaintiff had developed in its mark. In those cases, defendant's use of plaintiff's protected mark as a metatag steered customers to defendant's web site.  Customers would ultimately realize that the web site they were on was not the web site they had initially sought.  However, because the web site they were on was selling a comparable product, the customers could choose to buy it from defendant rather than go back to search for plaintiff's web site.  In this case, customers that experience initial interest confusion and go to Gregerson's web sites are not likely to, once they realize their mistake, buy photographs instead of real estate or financial services.

trademarks was fair use to identify the content of his web sites.  Id.  The court held that defendant could legitimately use plaintiffs' marks to describe the content of his web sites, which contained critical commentary about plaintiffs, but could not use the marks purposefully to divert internet users from plaintiffs' web sites.  Id. at 1247.

In the instant case, Defendants' Motion must be denied because they are unable to establish the first prong of the analysis, likelihood of success on the merits.  "A defendant's use of a trademark in metatags in a descriptive manner can constitute a non-infringing fair use."  Id. at 1246.  In addition, although the balance of harm could arguably tip in Defendants' favor because visitors to Gregerson's web sites are reading critical comments about Defendants, Gregerson does have a First Amendment right to free expression.  Also, the public interest factor does not weigh strongly in favor of either side since the public has an interest in the enforcement of both the trademark laws and the First Amendment.  Gregerson's voluntary changes to his web site cure much of the harm described in the Motion, and comport with the guidelines found to be appropriate in Purdy.  Id. at 1247.  Specifically, Gregerson has removed all inappropriate comments about Vilenchik's secretary/girlfriend, has added a disclaimer noting the critical commentary nature of the web site, and has edited the metatags of his web site so that they are in a more descriptive format.  However, the Court will continue to closely monitor Gregerson's use of his web sites to ensure that he is not using them in an infringing manner.  Although Defendants' Motion is denied at this time, it may be renewed in the future if circumstances change.  Prevailing on the Motion for Injunctive Relief should not be viewed as assurance that damages will not ultimately be assessed if liability is later determined.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Injunctive Relief [Docket No. 31] is **DENIED**.

                                                   BY THE COURT:

                                                   s/Ann D. Montgomery
                                                 ANN D. MONTGOMERY
                                                 U.S. DISTRICT JUDGE

Dated: November 7, 2006.