# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Chris Gregerson,

                Plaintiff,

       v.

Vilana Financial, Inc., a Minnesota
Corporation; Vilana Realty, Inc., a
Minnesota Corporation; and Andrew
Vilenchik, a private individual,

                Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 06-1164 ADM/AJB

_____

Chris Gregerson, *pro se.*

Boris Parker, Esq., Bassford Remele, Minneapolis, MN, on behalf of Defendants.

_____

## I. INTRODUCTION

On August 15, 2007, oral argument before the undersigned United States District Judge

was heard on Plaintiff Chris Gregerson's ("Gregerson") Motion for Summary Judgment [Docket

No. 88] and Defendant Andrew Vilenchik's ("Vilenchik") Motion for Summary Judgment

[Docket No. 93].  For the reasons set forth herein, Gregerson's Motion is granted in part and

denied in part, and Vilenchik's Motion is granted.

## II. BACKGROUND

The facts of this case are set forth in the Court's previous Orders [Docket Nos. 21, 54],

and therefore only a brief summary of the facts is necessary here.  Gregerson has alleged

copyright infringement against Defendants Vilenchik, Vilana Financial, Inc. ("Vilana

Financial"), and Vilana Realty, Inc. ("Vilana Realty") (collectively "Defendants") on the basis

that Defendants took two photographs from Gregerson's professional photography website

without permission and used them in phone book advertisements, web advertisements, print advertisements in a local Russian-language newspaper, advertising brochures, and a local business directory.  After discovering the use of the photographs, Gregerson contacted Defendants and apprised them of the fees due.  Defendants have not paid Gregerson for their use of the photographs, and aver that they lawfully purchased the photographs in question from Michael Zubitskiy, a mysterious individual that neither party has been able to locate.

After discovering Defendants' use of his photographs, Gregerson created a website on which he discusses Defendants and the photograph situation in an allegedly disparaging way. Defendants have filed counterclaims for deceptive trade practices, trademark infringement, interference with contractual and business relationships, appropriation, and unjust enrichment, arguing that Gregerson has used Defendants' trade and service marks in his websites to divert internet traffic from Defendants' websites to Gregerson's websites, and has caused Defendants to lose business.

Both parties have filed Motions for Summary Judgment.  Vilenchik asks that he be dismissed as an individual Defendant from the suit because all actions taken by him were in his capacity as a corporate officer.  Gregerson moves for partial summary judgment on liability for his copyright infringement claims and complete summary judgment on all of Defendants' counterclaims.[1]

---

[1] The procedural history of this case is complicated.  Prior to Gregerson's commencement of this federal lawsuit, Vilana Financial instituted a state court action against Gregerson, alleging claims for defamation and appropriation.  State Ct. Am. Compl. [Docket No. 11].  After Gregerson filed this federal lawsuit, Vilana Financial's state court case was removed and consolidated with the instant case.  Notice of Removal [Docket No. 11].  Defendants later filed an Answer and Counterclaims [Docket No. 22], which they amended once [Docket No. 55], asserting new claims and reasserting the appropriation claim.  After initially reasserting the

## III. DISCUSSION

**A.     Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.     Vilenchik's Personal Liability**

Vilenchik argues that he should be dismissed from this lawsuit because Gregerson fails to make any allegations in his Amended Complaint [Docket No. 76] that Vilenchik is personally liable for the acts of Vilana Financial, a corporation.  Vilenchik argues that he has not

---

defamation claim, Defendants have since chosen to withdraw it.  See Docket Nos. 22, 55. Defendants also aver they "did not carry [the defamation] claim forward from their state court action; instead Defendants asserted new and distinct claims as part of this federal action."  Defs.' Mem. [Docket No. 97] at 9.  Accordingly, there is no defamation claim in this case.  There has also been no further mention or pursuit of any removed, consolidated state court claims. Therefore, to avoid any future confusion, the Court finds Defendants' removed, consolidated state court claims to be dismissed, and the only claims now asserted by any Defendants in this case are the claims set forth in Defendants' Amended Answer and Counterclaims [Docket No. 55].

3

disregarded the corporate form and is not the alter ego of Vilana Financial.  Vilenchik further argues that Gregerson has failed to make any veil piercing allegations.  Gregerson responds that as Vilana Financial's sole board member and sole shareholder, Vilenchik is vicariously liable for Vilana Financial's infringing activity.  Gregerson also argues that Vilenchik is personally liable for his own tortious conduct.

Gregerson relies on <u>Pinkham v. Sara Lee Corporation</u>, 983 F.2d 824 (8th Cir. 1992) as authority that Vilenchik may be held vicariously liable.  In <u>Pinkham</u>, Camex sold Sara Lee 300,000 copies of Pinkham's book without informing Pinkham of the sale or paying her royalties from it.  983 F.2d at 826.  In examining Pinkham's claims, the court set forth the standard for vicarious liability on infringement: "(1) the right and ability to supervise the infringing activity; and (2) an obvious and direct financial interest in exploitation of copyrighted materials."  <u>Id.</u> at 834.  The court found that Camex's president and sole shareholder could be personally and vicariously liable because he personally approved the sale of Pinkham's books to Sara Lee and the price to be charged, and it was reasonable to infer that Camex anticipated profits from the sale of Pinkham's books.  <u>Id.</u>  Likewise, Camex's independent agent could be personally and vicariously liable because he was personally involved in the sale of the 300,000 books and received a commission for the sale.  <u>Id.</u>

In this case, Vilenchik can not be vicariously liable for Vilana Financial's use of Gregerson's photographs because the second element of the <u>Pinkham</u> test is not satisfied.  As the sole corporate officer and shareholder of Vilana Financial, it is reasonable to assume that Vilenchik had the right and ability to supervise the creation of the advertisements that utilized Gregerson's photograph.  However, Gregerson can not establish that Vilenchik had an obvious

and direct financial interest in the use of Gregerson's photographs.  Although Vilana Financial

may have profited indirectly by attracting customers through the use of an ad with an

aesthetically pleasing photograph, such indirect profit is too attenuated to serve as a basis for

holding Vilenchik vicariously liable.  If Vilenchik had sold Gregerson's photographs to others

like Camex's president and independent agent had with Pinkham's book, the <u>Pinkham</u> holding

would be apposite as a direct financial benefit.  Because <u>Pinkham</u> is distinguishable and because

Vilenchik did not derive an obvious and direct financial interest in the use of Gregerson's

photographs, Vilenchik is not vicariously liable for Vilana Financial's infringing activity.

Gregerson next cites to Minn. Stat. § 302A.251, subd. 4, which states in relevant part:

"The articles shall not eliminate or limit the liability of a director . . . (b) for acts or omissions

not in good faith or that involve intentional misconduct or a knowing violation of law."  This

statute addresses limitations on personal liability in articles of incorporation and does not serve

as a basis for holding Vilenchik personally liable.

Gregerson relies on <u>Oxmans' Erwin Meat Company v. Blacketer</u>, 273 N.W.2d 285, 289

(Wis. 1979), for the proposition that individuals are personally liable for their own tortious

conduct.  Although this is a true statement of the law, it does not apply to the facts of the instant

case.  Vilenchik, the sole officer and shareholder of Vilana Financial, used Gregerson's

photograph without Gregerson's permission to create an ad for Vilana Financial.  This is an

action Vilenchik necessarily would have taken in his capacity as a corporate officer of Vilana

Financial.  It is not sufficient to allege that Vilenchik committed a tort; rather, to hold Vilenchik

personally liable, Gregerson must allege that the Court should pierce the corporate veil.

However, Gregerson makes no such allegations, and the facts of the case do not suggest that

piercing the corporate veil would be warranted.  See Victoria Elevator Co. v. Meriden Grain Co., 283 N.W.2d 509, 512 (Minn. 1979).  Accordingly, Gregerson has failed to create a genuine issue of material fact with respect to Vilenchik's personal liability, and Vilenchik's Motion for Summary Judgment is granted.

**C.      Copyright Infringement**

Gregerson moves for partial summary judgment against Defendants on the issue of liability for copyright infringement of photographs #2891 and #2258.  "A claim for copyright infringement involves two elements: (1) ownership and validity of the copyright, and (2) potential violation of the copyright owner's exclusive rights by, for example, unauthorized reproduction and distribution of the copyrighted work."  Pinkham, 983 F.2d at 830.  Gregerson has produced certificates of copyright registration for all photos taken in 2002 and 2004, which include images #2891 and #2258.  Am. Compl. Exs. [Docket No. 77] C, M.  Gregerson's certificates of copyright registration constitute sufficient evidence of existence and ownership of a valid copyright for images #2891 and #2258, and there is no genuine dispute as to the ownership of the photos in question.

Gregerson has also produced sufficient evidence to establish that his exclusive rights were violated by Defendants' unauthorized reproduction and distribution of his copyrighted photos.  A comparison of Gregerson's photograph of the Minneapolis skyline (Image #2891) with the photograph of the Minneapolis skyline used by Defendants in a phone book advertisement, web advertisements, print advertisements in a Russian newspaper, and an advertising brochure, reveals that the two photographs are the same.  Am. Compl. Exs. A-C, F-H, N; Gregerson Aff. [Docket Nos. 91, 92] Ex. D.  Similarly, a comparison of Gregerson's

photograph of a house (Image #2258) with the photograph of a house used by Vilana Financial

in an advertising brochure demonstrates that the two pictures are identical.  Am. Compl. Exs. L-

N.  Gregerson avers that Defendants' use of his photographs was without his knowledge or

consent, and Gregerson by happenstance discovered his photograph in Defendants' phone book

advertisement.  Am. Compl. ¶ 16.  Gregerson believes that Vilenchik took his photographs from

his website without authorization to create the advertisements.  Am. Compl. ¶ 20.

Defendants concede that they used two photographs in advertisements that appear to be

substantially similar to Gregerson's photographs.  However, Defendants aver that they lawfully

procured the photographs in question from "Michael Zubitskiy," and were unaware that the

photographs belonged to Gregerson.  Defendants also argue that they could not have procured

the photographs from Gregerson's website because the photos used in the advertisements were of

high-resolution quality.  The photographs, if taken directly from Gregerson's website, are

accessible only in low resolution.  However, "[o]nce a plaintiff has proven that he or she owns

the copyright on a particular work, and that the defendant has infringed upon those 'exclusive

rights,' the defendant is liable for the infringement and this liability is absolute."  Pinkham, 983

F.2d at 829.  Defendants' intent is irrelevant because Defendants are "liable even for 'innocent'

or 'accidental' infringements."  Id.  "Even where the defendant believes in good faith that he is

not infringing a copyright, he may be found liable."  Id.

Gregerson has established that he owns a valid copyright for images #2891 and #2258,

and that Defendants used his photographs without permission in advertisements.  Regardless of

whether Defendants believe they procured Gregerson's photographs lawfully, it has been

established that they reproduced and distributed the photos in question.  Accordingly, Gregerson

is entitled to summary judgment as to liability on his copyright claims.  Gregerson's copyright claims are now limited to the issue of damages for the use of the photos.  At trial, the witnesses and the evidence will focus solely on the proper measure of damages, and no introduction of testimony or evidence with respect to how Defendants procured the photographs in question will be allowed.

**D.      Trademark Infringement**

Defendants assert a claim for trade name, mark, and insignia infringement and dilution under Minn. Stat. § 333.28 and 15 U.S.C. §§ 1114, 1125.  Defendants argue that Gregerson has used Defendants' registered trade and service marks in the subject and metatags of Gregerson's websites to divert internet traffic from Defendants' websites onto Gregerson's websites. Defendants argue that Gregerson's use of Defendants' trade and service marks in website metatags causes search engines such as Google and Yahoo to highly rank Gregerson's websites, such that a consumer conducting a search using the terms Vilana, Vilana Financial, or Vilana Realty, is likely to be directed to Gregerson's websites.  Defendants argue that Gregerson's actions have created actionable initial interest confusion.  Gregerson argues that his use of Defendants' trade and service marks is not infringing because it is only for identification purposes in essays, and there is no likelihood of confusion.

An element common to Minn. Stat. § 333.28 and 15 U.S.C. §§ 1114, 1125 is that Gregerson's use of Defendants' trade and service marks must be likely to cause confusion.  "The likelihood of customer confusion is 'the hallmark of any trademark infringement claim.'" Transclean Corp. v. Bridgewood Servs., Inc., 77 F. Supp. 2d 1045, 1092 n.28 (D. Minn. 1999) (citation omitted), aff'd in part and vacated in part, 290 F.3d 1364 (Fed. Cir. 2002).  "The

ultimate inquiry always is whether, considering all the circumstances, a likelihood exists that consumers will be confused about the source of the allegedly infringing product." Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 602 (8th Cir. 1999).  Factors to consider include:

> (1) the strength of the owner's mark; (2) the similarity of the owner's mark to the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to "pass off" its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) whether the degree of care exercised by the consumer can eliminate a likelihood of confusion that otherwise would exist.

Id.

Initial interest confusion can also lead to trademark infringement.  "Initial interest confusion in the internet context derives from the unauthorized use of trademarks to divert internet traffic, thereby capitalizing on a trademark holder's goodwill." Australian Gold, Inc. v. Hatfield, 436 F.3d 1228, 1239 (10th Cir. 2006).  A defendant's use of a plaintiff's trademarks in his metatags for the purpose of diverting internet traffic away from the plaintiff's website and onto the defendant's website can constitute trademark infringement, but "[a] defendant's use of a trademark in metatags in a descriptive manner can constitute a non-infringing fair use." Faegre & Benson, LLP v. Purdy, 367 F. Supp. 2d 1238, 1246-47 (D. Minn. 2005).

The likelihood of confusion factors are not readily applied to the unusual facts of the instant case.  Gregerson and Defendants are not competitors and do not sell similar products—Vilana Financial sells mortgages and financial services, Vilana Realty sells real estate services, and Gregerson sells photographs.  The fact that the parties' products do not compete with one another weighs heavily against a finding of likelihood of confusion.  Defendants have submitted affidavits from three individuals claiming Gregerson's website has created confusion

amongst customers, brokers, and lenders.  Smith Aff. [Docket No. 35]; Fischer Aff. [Docket No. 36]; Richardson Aff. [Docket No. 37].  However, the affiants aver generally that there is confusion with respect to Gregerson's website and the nature and purpose of the content involving Vilana Financial, and do not give specific examples of customers or individuals in the real estate business becoming confused as to whether Vilana sells photographs or whether Gregerson is affiliated with Vilana.  It is highly unlikely that someone looking for any of Vilana's services became confused and accidentally bought photographs instead.

Defendants have established that there may be "initial interest confusion" in the sense that some individuals using search engines to look for Vilana Financial's website may instead have landed on Gregerson's website.  However, the "initial interest confusion" cases generally concern competing products.  See, e.g., Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1062-65 (9th Cir. 1999).  Also, like the defendant in Purdy, Gregerson's website contains critical commentary about Defendants, and Gregerson's use of Defendants' trade and service marks is intended to catalogue and describe the contents of his website, not merely to divert internet users from Defendants' websites.  See 367 F. Supp. 2d at 1246-47.  The Court concludes that Defendants have failed to demonstrate on the record the existence of specific facts which create a genuine issue for trial with respect to likelihood of confusion.  Gregerson's Motion for Summary Judgment is granted with respect to Defendants' claims for trade and service mark infringement.

**E.    Cyberpiracy**

Defendants assert that Gregerson has violated the Cyberpiracy Prevention Statute, 15 U.S.C. § 1125(d), by having a bad faith intent to profit by using a domain name that is identical

to or confusingly similar to Defendants' trade and service marks.  Defendants have failed to

create a genuine issue of material fact that Gregerson had a bad faith intent to profit by using

Defendants' trade and service marks in a domain name.  In addition, with respect to

"http://www.cgstock.com/essays/vilana.html," the internet address in question,

"www.cgstock.com" is the domain name and "/essays/vilana.html" is the path to a file.  The

American Heritage dictionary defines "URL," or "uniform resource locator," as: "An internet

address (for example, http://www.hmco.com/trade/), usually consisting of the access protocol

(http), the domain name (www.hmco.com), and optionally the path to a file or resource residing

on that server (trade)."  The American Heritage Dictionary of the English Language 1893 (4th

ed. 2000).  Therefore, Defendants are unable to establish that Gregerson uses a domain name that

is identical or confusingly similar to Defendants' trade and service marks.  See 15 U.S.C. §

1125(d)(1)(A).  Gregerson's Motion for Summary Judgment is granted with respect to the

cyberpiracy portion of Defendants' claims for trade and service mark infringement.

## F.    Deceptive Trade Practices

Defendants assert a claim for deceptive trade practices under Minn. Stat. § 325D.44.

Gregerson argues that Defendants have not offered any evidence that Gregerson has disparaged

their business through false or misleading representations of fact.  Defendants respond that

Gregerson has disparaged Defendants on his commercial photography website by posting, and

allowing other users to post, comments that Defendants are thieves, members of the Russian

mafia, and actively engaged in fraudulent business conduct and predatory lending practices.

Minn. Stat. § 325D.44, subd. 1, states in relevant part:

A person engages in a deceptive trade practice when, in the course of business, vocation,
or occupation, the person: (8) disparages the goods, services, or business of another by

11

false or misleading representation of fact; . . . or (13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

In order to prevail on a deceptive trade practices claim, Defendants "need not prove competition between the parties or actual confusion or misunderstanding."  Minn. Stat. § 325D.44, subd. 2. The Court finds that Defendants have submitted sufficient facts to create a genuine issue of material fact as to whether Gregerson has disparaged their business through false or misleading representations of fact.  Defendants have submitted evidence that Gregerson has posted, or allowed others to post, comments on his commercial photography website that, if untrue or misleading, make damaging comments about Defendants' business.  See Parker Aff. [Docket No. 99] Exs. E, F.  Whether or not the comments are true is not the subject for summary judgment consideration.  Accordingly, Gregerson's Motion for Summary Judgment is denied with respect to Defendants' counterclaim for deceptive trade practices.

**G.    Interference with Contractual and Business Relationships**

Count three of Defendants' counterclaims asserts a claim for interference with contractual and business relationships.  Gregerson argues that he is entitled to summary judgment on this claim because all statements he made about the Defendants on his website are true.  Defendants respond that Gregerson's use of Defendants' names on his commercial photography website induced other third persons not to enter into or continue relations with Defendants.  In support of their arguments, Defendants offer comments from users on Gregerson's website, such as: "I intend to let all my family and friends know about Mr. Vilenchik's theft, and to discourage them from doing any business with Vilana Financial," and "Vilenchik and Vilana are idiots, greedy and dishonest idiots—never do any business with Vilenchik."  Parker Aff. Ex. N.  Defendants also cite to the affidavit of Pauline Fischer, an

12

account executive with a company that has worked with Vilana Financial.  Fischer noted a drop in the number of closing requests for Vilana Financial, and believes Gregerson's website is confusing and detrimental to Vilana Financial's success.  Fischer Aff. ¶¶ 4-7.  Also, an affidavit from James Smith, a Vilana Financial client, notes Smith's hesitation at doing business with Vilana Financial as a result of Gregerson's website.  Smith Aff. ¶¶ 10-11.

Minnesota has adopted the Restatement (Second) of Torts' standard for the tort of intentional interference with prospective contractual relations:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relations, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 632-33 (Minn. 1982) (citing the Restatement (Second) of Torts § 766B).  Defendants have submitted sufficient evidence to create a genuine issue of material fact as to whether Gregerson committed the tort of intentional interference with prospective contractual relations.  After viewing Gregerson's website, Defendants' evidence suggests customers and other businesses became wary of doing business with Defendants.  Although Gregerson is correct that truth is a defense to liability, all of Gregerson's statements on his website have not yet proven to be true.  See Glass Serv. Co. v. State Farm Mut. Auto. Ins. Co., 530 N.W.2d 867, 871 (Minn. Ct. App. 1995) ("no liability for interference on part of one who merely gives truthful information to another").  Accordingly, Gregerson's Motion for Summary Judgment is denied with respect to Defendants' counterclaim for interference with contractual and business relationships.

## H.    Appropriation

Count four of Defendants' Counterclaims asserts a claim for appropriation.  Gregerson has moved for summary judgment on Defendants' appropriation counterclaim, arguing that he has not used Vilenchik's name or likeness for his own benefit, but only to identify Vilenchik in an essay about Vilenchik.  Gregerson also argues that a corporation can not bring an action for invasion of privacy.  Defendants respond that use of Defendants' names and service marks on a disparaging internet website linked to Gregerson's commercial photography webpage is tortious appropriation.  Defendants also argue that Gregerson took a picture of Vilenchik without Vilenchik's permission and posted it on his website.  Defendants assert Vilenchik has asked Gregerson to take the photograph off the website, but Gregerson has refused to do so.

"Appropriation protects an individual's identity and is committed when one 'appropriates to his own use or benefit the name or likeness of another.'"  Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998).  In recognizing the tort of appropriation, the Supreme Court of Minnesota relied on the Restatement (Second) of Torts.  Id.  The Restatement describes the ways in which an individual can invade another's privacy:

> The common form of invasion of privacy under the rule here stated is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose.  Apart from statute, however, the rule stated is not limited to commercial appropriation.  It applies also when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one.

Restatement (Second) of Torts § 652C, comment b.

Defendants have alleged sufficient facts to create a genuine issue of material fact as to whether Gregerson has committed the tort of appropriation.  Gregerson has used Defendants' names in a disparaging way on an internet website that is linked to Gregerson's commercial

photography website.  Arguably, the use of Defendants' names may bring Gregerson increased consumer traffic to his commercial website.  However, even without a commercial aspect, Defendants have alleged sufficient facts that Gregerson has used their names and Vilenchik's photograph for his own purposes and benefit, to the detriment of Defendants.

In addition, the Restatement (Second) of Torts § 652I states: "Except for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by a living individual whose privacy is invaded."  Comment c to the Restatement (Second) of Torts § 652I states:

> A corporation . . . has no personal right of privacy.  It has therefore no cause of action for any of the four forms of invasion covered by §§ 652B to 652E.  It has, however, a limited right to the exclusive use of its own name or identity in so far as they are of use or benefit, and it receives protection from the law of unfair competition.  To some limited extent this may afford it the same rights and remedies as those to which a private individual is entitled under the rule stated in § 652C.

Accordingly, Gregerson's argument that the corporate Defendants may not bring a cause of action for appropriation is unfounded.  Gregerson's Motion for Summary Judgment is denied with respect to Defendants' counterclaim for appropriation.

## I.     Injunction

In count five of their counterclaims, Defendants ask for an injunction.  Gregerson asks for summary judgment on this count, and Defendants ask that Gregerson's Motion be denied.  In the Court's November 7, 2006 Order, Defendants' Motion for Injunctive Relief was denied.  There is no reason to revisit the November 7, 2006 Order at this time, but also no reason to remove injunction as a possible remedy for Defendants, should they prevail at trial.  Gregerson's Motion for Summary Judgment barring injunctive relief is denied.

## J.     Unjust Enrichment

Count six of Defendants' counterclaims is a claim for unjust enrichment.  Gregerson moves for summary judgment, arguing that Defendants have produced no evidence that Gregerson received something of value to which he was not entitled.  Defendants respond that Gregerson has benefitted financially at Defendants' expense.  "In order to establish a claim for unjust enrichment, the claimant must show that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit."  Schumacher v. Schumacher, 627 N.W.2d 726, 729 (Minn. Ct. App. 2001).  Gregerson's Motion for Summary Judgment with respect to Defendants' claim for unjust enrichment is granted.  Defendants' claim that Gregerson received increased profits in his commercial photography business or "something of value" as a result of his website commentary on Defendants is purely speculative.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Chris Gregerson's Motion for Summary Judgment [Docket No. 88] is **GRANTED IN PART AND DENIED IN PART**.  Specifically, Gregerson's Motion is **GRANTED** with respect to (1) liability on his copyright infringement claims, and (2) Defendants' counterclaims for trade and service mark infringement and unjust enrichment. Gregerson's Motion is **DENIED** with respect to Defendants' counterclaims for deceptive trade practices, interference with contractual and business relationships, appropriation, and injunctive relief; and

2. Defendant Andrew Vilenchik's Motion for Summary Judgment [Docket No. 93] is

**GRANTED**.


BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 31, 2007.