UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Chris Gregerson,<br><br>                      Plaintiff,<br><br>vs.<br><br><br>Vilana Financial, Inc., a Minnesota Corporation; Vilana Realty, Inc., a Minnesota Corporation<br><br>                      Defendants. | No.: 06-cv-01164 (ADM/AJB)<br><br>**DEFENDANTS' STATEMENT<br>OF THE CASE** |

_____

**DEFENDANTS' STATEMENT OF THE CASE**

Vilana Financial, Inc., (hereinafter "Vilana Financial"), Vilana Realty, Inc. (hereinafter "Realty") collectively "Defendants" and "Counterclaimants," and Andrew Vilenchik[1] ("Vilenchik" or "Counterclaim Plaintiff") for their Answer and Counterclaims state and allege as follows.

At the time of the initial wrongdoing by Gregerson, both Vilana Financial and Vilana Realty employed over forty-five (45) individuals, including real estate agents, loan officers and administrative support staff. Counterclaimant Andrew Vilenchik, is the President and principal shareholder of both Vilana Finiancial and Vilana Realty. In March, 2004, Vilana Financial purchased a photograph of the Minneapolis skyline and the St. Paul Skyline for use in its 2005/2006 advertising with Qwest Dex. The photograph claimed to be owned by Gregerson is that of the Minneapolis Skyline.

---

[1] Plaintiff's claims against Andrew Vilenchik were dismissed on Summary Judgment by the Court.

1

The ad was submitted for publication to the Dex Plus Twin Cities directory ("Dex") in the spring of 2005. Vilana Realty was also listed on the ad to inform prospective customers that real estate and financial services could be jointly or separately obtained. Vilana Realty never acquired nor used the photograph in question independently of Vilana Financial. In fact, Vilana Realty was not in existence at the time the photograph at issue was purchased by Vilana Financial on March 19, 2004.

Vilana Financial only used the photograph one time as part of its start-up ad campaign and never reproduced the photograph for distribution or profit. Finally, Vilana Financial never sold or distributed any of the publications containing the photograph in question. On June 6, 2005, Gregerson sent a letter to Vilana Financial regarding the use of the photo and seeking payment of the fees supposedly due to Gregerson for unauthorized use.

Having lawfully procured a number of photographs for website development use from a third party in March 2004, including the photograph allegedly owned by Gregerson, Vilana Financial responded to Gregerson that it had paid for and acquired the photo lawfully and questioned Gregerson's motive given his exurbanite demands in light of the fact that Gregerson list photograph for sale on is website for a price of $50 each. Notwithstanding the fact that Vilana Financial had already paid for the photo, Vilana Financial offered to pay Gregerson the amount of $500.00 to resolve the matter, which was 10 times the advertised price by Gregerson. Gregerson refused the offer.

Sometime thereafter, Gregerson filed suit against Vilana Financial <u>only</u> in small claims court for copyright violations seeking $7,500. The small claims matter was dismissed however, because Vilana's counsel argued successfully that the copyright issue belonged in Federal Court.

Shortly thereafter, Gregerson set up a disparaging website, attacking Vilana corporations and Andrew Vilenchik personally by describing them as thieves engaged in fraudulent business conduct and intimating predatory lending practices, all the while diverting potential Vilana customers to his website by unlawful use of Counterclaimants' trade names.  In other words, Gregerson set up his website with the sole intention of sabotaging Counterclaimants' business and has unfortunately succeeded, causing numerous people to loose their jobs as the business began to suffer.  For Gregerson however, the website has served as a business promotion tool. His online photography business has received tremendous publicity at the detriment and expense of Counterclaimants.  Gregerson is using this lawsuit and his website as tools for generating income, which he is unable to lawfully earn.

A State Court action was filed by Vilana Financial asserting defamation and resulting in a temporary restraining order and the shut down of Gregerson's website devoted to Vilana.  The facts of the case indicate that Gregerson brought this Federal Court action with the sole aim of "making money" and further disparaging the Counterclaimants.  The matter has escalated to a point where Gregerson unlawfully directs via unauthorized use of Counterclaimants Trademarks and Trade names, by way of search engines such as Google and Yahoo, Vilana's present and potential customers to his photo business online website called cgstock.com.

The business website contains a link to commentary geared solely towards not only attacking Andrew Vilenchik personally and using his photograph without his consent or authorization, but also discrediting the businesses of Vilana Financial and Vilana Realty, which Gregerson has never used or inquired about.  Gregerson possesses no knowledge of Counterclaimants' business practices, nor has he shown any desire to learn when provided with the opportunity.  Yet he has posted information on his business website to intentionally mislead

3

and confuse the public and thereby benefit his own business by directing the individuals of the public to his photography website, who believe they are receiving credible information on Vilana or are being linked to Vilana Financial's website.

The present case, as has been Gregerson's intention from the beginning, has brought nothing but enhanced publicity for his photographs and his online business as a whole. Through publication in Dex, and Gregerson's subsequent diversion of Vilana Financial's customers to his online business website, Gregerson's photography business has received free and heightened publicity. Gregerson, in fact, has lost nothing from Vilana Financial's use of his alleged photograph, which it believed to be lawful use based on the photographs purchase from a third party. Gregerson has sued Andrew Vilenchik personally without any legal basis or justification and has failed to plead any facts by which he claims Mr. Vilenchik is or can be held personally liable for the acts performed on behalf of a corporation as its officer.

It is clear that Gregerson's sole aim in this lawsuit is to extort money from Counterclaimants by way of disparagement, unauthorized use of their intellectual property and interference with customer business relations, all intended to harm Counterclaimants both personally and financially. As more fully set forth below Gregerson is willing to use any tactic necessary to accomplish his goal. As a direct and proximate result of Gregerson's conduct and those conspiring with him, Counterclaimants have been damaged in excess of $100,000.00.

### I.     Gregerson Engaged In Deceptive Trade Practices

Minnesota Statute section 325D.44, subdivision 1 provides:

> A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: ….
> (8) disparages the goods, services, or business of another by false or misleading representation of fact; …. or ….

>   (13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn. Stat. § 325D.44, subd. 1 (West 2007). "In order to prevail in an action under [this section] a complainant need not prove competition between the parties or actual confusion or misunderstanding." Minn. Stat. § 325D.44, subd. 2.  Defendants assert a counterclaim against Gregerson for deceptive trade practices.  Defendants allege that Gregerson disparaged both Vilana Financial and Andrew Vilenchick on his stock photography business website.

Gregerson owns a stock photography business that he operates using the internet.  On the home page of his stock photography business website, Gregerson has a link to Vilana Financial. Gregerson's Vilana Financial link disparages the business and business services of Vilana Financial, Vilana Realty and Andrew Vilenchik personally by making false and misleading representations of fact.   In general, the website, web log and other comments posted on the web by Gregerson disparage the Defendants as being thieves, members of the Russian mafia, and actively engaged in fraudulent business conduct and predatory lending practices   Specifically, Gregerson allows certain posts on his website that state: "Vilana Financial/Andrew Vilenchik's Copyright Violation, Fraud and Forgery"; "Andrew Vilenchik and his business are an illegal entity that severely break law"; "[Vilenchik] is a thief!!!"  Gregerson states: "Vilana Financial offers debt consolidation loans, home financing, foreclosure bailouts, and other major financial transactions. Based on the events described above, I would not use Vilana Financial's services." Gregerson makes this statement and suggests third parties file complaints against Vilana Financial even though he has never used any Vilana service.

Individuals and entities in business with the Defendants acknowledge that Gregerson's website is diverting customers away from Vilana Financial.   Chris Richardson, an account

executive with ING Mortgage who works in the wholesale lending channel of ING Mortgage with Vilana Financial, made the following observations:

> Approximately one year ago I did a search on the internet for Vilana Financial in order to review their updated list of services and/or promotions on their website. When I did the search for Vilana Fiancial my attention was diverted to a separate third party website which to the best of my recollection contained a rant about Vilana and Andrew Vilenchik, but was actually set up for purposes of selling photographs. I have since learned that the individual responsible for the rant about Vilana and the photography website is Chris Gregerson. I read the content on Mr. Gregerson's website and was disturbed by the allegations and comments that were posted. I did not know if they were true or false, but regardless I perceived them to be damaging to Vilana and its relationship with ING. I subsequently contacted Andrew Vilenchik and asked for an explanation regarding the matters set forth on Gregerson's website and the confusion that it was likely to cause amongst the clients. I asked Andrew what this was all about and how it would affect his business and out relationship. He told me that this was simply a harassment tactic and a money extortion mechanism being used by Gregerson because Gregerson lost in court. Andrew further indicated that he had hired an attorney to deal with the issue. I followed up with Andrew regarding the website periodically to see if it was affecting his business, given the fact that the number of loan referrals from Vilana Financial had dropped. … Based on my knowledge, I believe that there is confusion amongst customers, brokers and lenders about the origin of Gregerson's website and the nature and purpose of the content involving Vilana Financial, which is creating a negative and disparaging image of the company.

(Richardson Aff. ¶¶ 6-10.)

As discussed above, this website diverts potential Vilana customers away from the Vilana Financial site and toward Gregerson's site by using the Vilana Service Marks in the site's domain name, meta-tags, and content. Gregerson is aware that his website negatively affects Vilana's business because these matters were thoroughly briefed in Defendants' October 20, 2006, Motion for Injunctive Relief. Nevertheless, Gregerson continues to maintain the site, persists in adding commentary and supports further posts authored by the general public. *See* http://www.cgstock.com/essays/vilana.html. This website substantially contributed to the demise of Vilana Financial; Gregerson's diversion of the public away from the Vilana companies cost the business money and, as a result, numerous people lost their jobs.

## II.     Gregerson Interfered With Vilana's Contractual And Business Relationships

Minnesota courts recognize a claim for tortious interference with prospective economic advantage, adopting the Restatement (Second) of Torts definition, which states:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> (a)   inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> (b)   preventing the other from acquiring or continuing the prospective relation.

*United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 632-33 (Minn. 1982) (citing Restatement (Second) of Torts § 766B (1979)).  Such interference must be intentional.  *Oak Park Dev't Co., Inc. v. Snyder Bros. of Minnesota, Inc.*, 499 N.W.2d 500, 506 (Minn. Ct. App. 1993).

Gregerson's use of Defendants' names on his stock photography website induced other third persons not to enter into, or continue, relations with Defendants.  On Gregerson's web log forum, for example, there is a posting dated November 4, 2005, from an individual by the name of Anne Sawyer-Aich in Minneapolis that states, in pertinent part, "[i]n the meantime, I intend to let all my family and friends know about Mr. Vilenchik's theft, and to discourage them from doing any business with Vilana Financial."  This comment was made in response to Gregerson's statement that "Vialna Financial offers debt consolidation loans, home financing, foreclosure bailouts, and other major financial transactions.  Based on the events described above, I believe Vilana Financial can't be trusted to act in good faith or be honest."  Gregerson also filters and allows "Anonymous" postings on this web log that make unsupported statements like, "Vilenchik and Vilana are idiots, greedy and dishonest idiots – never do any business with Vilenchik."

In addition to the posts on Gregerson's web log, other individuals in business with Defendants believe Gregerson's websites and web log is diverting customers away from Defendants and causing confusion. For example, Pauline Fischer, an account executive with Stewart Title, a company that oversaw closings for Vilana Financial, noted the following with regard to Gregerson and his website's impact on Defendants.

> In late 2005, upper management at Stewart Title approached me and asked questions regarding the status of Vilana Financial, as a result of a significant drop in closing requests from the company. They were concerned about Vilana Financial's status in the brokerage and lending community. I brought up the concerns Stewart Title management had expressed to me with Andrew Vilenchik. Andrew indicated that a website was organized by an individual named Chris Gregerson, who was diverting Vilana Financial customers to his website, where Vilana Financial and Andrew were being defamed and customers discouraged from doing business with Vilana Financial. I went on the internet and saw the website created by Gergerson come up when one did a search for Vilana Financial, along with the various references by Gregerson to Vilana Financial and Vilana Realty that in my opinion were clearly intended to mislead and confuse the public and to drive people to his website containing his photography business. Based on my subsequent searches and inquiries, I believe that there is confusion amongst customers and individuals in the mortgage real estate business with respect to Gregerson's website and the nature and purpose of the content involving Vilana Financial, which is detrimental to Vilana Financial and very hard to overcome given the competitive nature of the industry.

(Fischer Aff. ¶¶ 4-7.)

Ms. Fischer's reactions to Gregerson's website are from the perspective of a company assisting Defendants on the business end of matters; individual clients of Vilana Financial are also influenced and confused by Gregerson's website. James Smith is an individual who was a client of Vilana Financial for two years. (Smith Aff. ¶¶1-4.) Mr. Smith's independent impression of Mr. Vilenchik was that he "is an honest, trustworthy, and reliable person" and that "Vilana Financial, Inc. has performed accordingly and met [his] expectations." (Smith Aff. ¶ 5.) Nevertheless, when Mr. Smith's son called his attention to Gregerson's website, Mr. Smith began thinking that Mr. Vilenchik may be a thief. (Smith Aff. ¶¶ 6-8.) Mr. Smith stated: "I am

very much effected by Mr. Gregerson's website, and despite my personal knowledge of and relationship with Mr. Vilenchik, I am leary of doing business with Vilana Financial, Inc." (Smith Aff. ¶ 10.)  Mr. Smith added: "I have spoken with other people, including current, former, or potential customers of Vilana Financial, Inc. and they have also expressed unwillingness to do business with Vilana Financial, Inc. due to Mr. Gregerson's website.  They share my 'cold feet' reaction over the accusation of "theft."  (Smith Aff. ¶ 11.)

These facts demonstrate that Gregerson's use of Defendants' names was intentional and has persisted since September 3, 2005, the date of Gregerson's first post to his stock photography website.  Accordingly, Defendants suffered monetary damages as a result of Gregerson's website that amounts to a legal claim for interference with Vilana's contractual relationships.

### III. Gregerson Appropriated Andrew Vilenchik's Name And Likeness

Defendants assert a counterclaim against Gregerson sounding in the tort of appropriation. In *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 236 (Minn. 1998) the Minnesota Supreme Court adopted three separate causes of action which are generally referred to as the tort of invasion of privacy:  intrusion of seclusion, appropriation of a name or likeness of another, and publication of private facts.  Appropriation protects an individual's identity and is committed when one "appropriates to his own use or benefit the name or likeness of another."  *Id*. at 233 (citing Restatement (Second) of Torts § 652C); *Kovatovich v. K-Mart Corp.*, 88 F.Supp.2d 975, 985 (D. Minn. 1999).

Although this law is "relatively undeveloped" in the State of Minnesota, the Restatement explains that "the protection of … personal feelings against mental distress is an important factor leading to a recognition of the rule." *Kovatovich*, 88 F.Supp.2d at 987; Restatement (Second) of

Torts § 652C.  The right is invaded when a person's name or likeness is used "to advertise [the tortfeasor's] business or product, or for some similar commercial purpose … [but] is not limited to commercial appropriation."  Restatement (Second) of Torts § 652C.

In the instant case, Plaintiff invaded Defendant Vilenchik's privacy by appropriating his likeness and name to his own use or benefit.  First, Gregerson established an internet site and web log devoted to Defendants Andrew Vilenchik, Vilana Financial, and Vilana Realty   This site, which incorporates the Defendants' names and Service Marks into its domain names and meta-tags, is attached to and accessible through Gregerson's commercial photography business' home page on the internet.   As such, it draws potential Vilana customers to Gregerson's photography page when those potential customers use a search engine, such as Google or Yahoo, to locate the Defendants' business.  This in turn generates additional attention for Gregerson's stock photography business and correspondingly distracts and diverts interest away from the Vilana companies.   By monopolizing on Defendants' advertising efforts and notoriety, Gregerson attracts attention and business to his own internet business.  Accordingly, Gregerson wrongfully appropriates Defendants' name.

Second, Gregerson also appropriates Defendants' likeness. During Andrew Vilenchik's deposition on February 13, 2006, which Gregerson noted and took in connection with this case, Gregerson covertly captured Andrew Vilenchik's photograph and then posted that photograph on his website.  *See* www.cgstock.com/essays/vilana.html; (Parker Aff. Ex. E p.1.)  Gregerson took this photograph without Andrew Vilenchik's knowledge or permission.  (Parker Aff. Ex. G.)  Mr. Vilenchik's photograph continues to remain posted on the website despite Mr. Vilenchik's demand to have the photograph removed.  (*See* www.cgstock.com/essays/vilana.html; and Parker Aff. Ex. G.)  In response to Mr. Vilenchik's request, Gregerson wrote in an email to Mr.

10

Vilenchik, "I will probably remove your photo eventually, too.  However, I'm not willing to do that yet."  (*Id.*)  Gregerson's use of Andrew Vilenchik's photograph is for Gregerson's benefit – to increase traffic to his business' website – and without Andrew Vilenchik's permission.  This is appropriation in itself and exacerbates the appropriation involving Gregerson's use of the Defendants' names.

### IV. Defendants Seek An Injunction Against Gregerson's Website

Defendants assert a counterclaim against Gregerson for an injunction.  Defendants assert that they have suffered irreparable harm and will continue to suffer irreparable harm as a result of Gregerson's continued operation of his website.  (*Id.*)  In an effort to avoid duplicative legal argument, Defendants direct the Court to Defendants' Memorandum of Law in Support of Motion for Injunctive Relief, dated October 20, 2006.  For the reasons outlined therein, the Court should deny Gregerson's motion for summary judgment with regard to Defendants' counterclaim for an injunction.

### V. Gregerson's Copyright Claims

Defendants admit they used two photographs that appear to be substantially similar to Gregerson's images numbered 2891 and 2258 in print publications.  These photographs were used in the Dex Minneapolis/St.Paul directory, an internal company brochure, and online in an add for a Russian newspaper called Zerkalo.  Defendants place the burden on Gregerson to show that he is the owner of those two photographs and that he did not assign his rights to those photographs away to any third parties.

Defendants have evidence that photograph number 2891 was licensed to at least two separate parties prior to their alleged use by Defendant Vilana Financial. First, Defendants obtained through discovery evidence that a third party used the photograph on their personal website without a license and, upon Gregerson's discovery of their use, were not charged any fee. Second, on April 30, 2004, MSP Communications (the Minneapolis/St. Paul Magazine) obtained a license from Gregerson to use photograph number 2891 for a press run of up to 75,000 copies in exchange for $150, less a multi-picture discount.

It is important to note that the photograph Gregerson provided to MSP Communications was in a high resolution format. This is the same high resolution format Defendants used in its advertising with Dex. The version of the photograph that is available on the internet, however, is available only in low-resolution format, which Gregerson himself confirmed is of insufficient quality for print media. This raises a question with regard to how Defendants could have procured a high-resolution image; since Gregerson himself admits the resolution quality of his online photograph is of insufficient resolution for purposes of placing a photograph in print media, the photograph used by Vilana Financial could not have been simply pulled from Gregerson's website, which has been his purported explanation of how the photograph came into Vilana's possession.

Defendants vigorously dispute that their use of these photographs results in monetary liability greater than the $5,000 demanded by Gregerson in his June 6, 2005 letter to Vilana. The damages demanded by Gregerson in this matter are entirely inconsistent with the fees demanded by Gregerson in other settings which range from $150 - $7,500, or charged to the MSP Communications ($150.00 for a press run of up to 75,000 copies) for the very same photograph (#2891) at issue in this case. Nevertheless, Gregerson demands $250,000 in his Complaint and

12

is determined to "get the maximum damages," even though there is no basis for his damage claims based on the evidence at bar.  Similarly, Plaintiffs claims related to image number 2258, which was used by Vilana in a brochure with a print run of approximately 1000 copies, are limited to the value of the image at $150.00, based on Plaintiff's pricing to third parties set forth above.

### VI.     Estimated Time For Trial

Two day Court Trial.

Respectfully submitted,

**BASSFORD REMELE**
*A Professional Association*

Dated:  October 22, 2007                    By      /s/ Boris Parker
                                            Boris Parker (License # 291316)
                                            Lisa P. Harper (License # 0346172)
                                            33 South Sixth Street, Suite 3800
                                            Minneapolis, Minnesota  55402-3707
                                            (612) 333-3000

                                            *Attorneys for Defendants*