UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Chris Gregerson,

       Plaintiff,

  v.

Vilana Financial, Inc., a Minnesota
Corporation and Vilana Realty, Inc., a
Minnesota Corporation,

       Defendants.

**FINDINGS OF FACT,
CONCLUSIONS OF LAW, AND
ORDER FOR JUDGMENT**
Civil No. 06-1164 ADM/AJB

_____

Chris Gregerson, *pro se*.

Boris Parker, Esq., Bassford Remele, Minneapolis, MN, on behalf of Defendants.
_____

## I.  INTRODUCTION

The above-titled matter was tried by consent of the parties as a court trial before the undersigned United States District Judge beginning on November 5, 2007.  At issue were Plaintiff Chris Gregerson's ("Plaintiff") claim of copyright infringement against Vilana Financial, Inc., and Vilana Realty, Inc. ("Defendants") and Defendants' counterclaims of deceptive trade practices, intentional interference with prospective contractual relation, and appropriation against Plaintiff.  Having previously determined in a prior order [Docket No. 108] that Defendants are liable to Plaintiff for copyright infringement, the only issues for trial on Plaintiff's claim related to damages.  After two days of trial and hearing the testimony of eight witnesses, the Court finds in favor of Plaintiff and dismisses Defendants' counterclaims with prejudice.

## II.  FINDINGS OF FACT

1. Plaintiff is a photographer of stock images that he licenses on a single-use basis and that can be purchased as prints.

2. Defendants are Minnesota corporations offering mortgage, financial, and real estate services.  Andrew Vilenchik ("Vilenchik") is the principal shareholder of both corporations.

3. Two photographs taken by Plaintiff, image 2981, hereinafter referred to as the "Skyline" photograph, and image 2258, hereinafter referred to as the "Kenwood" photograph are the basis of the infringement claim.  The Skyline photograph is a picture of the Minneapolis skyline taken by Plaintiff on January 8, 2004.  The Kenwood photograph is a picture of a home taken by Plaintiff on August 20, 2002.

4. Plaintiff maintains a website where he publishes his photography, including the Skyline and Kenwood photos.  The website, cgstock.com: Phototour of Minneapolis, can be accessed at two web addresses: (1) http://www.phototour.minneapolis.mn.us; and (2) www.cgstock.com.  Plaintiff uses the website to publish his photographs and as a medium for his stock photography business.  Persons interested in using Plaintiff's photographs may license them according to the terms and prices set forth on the website.

5. On January 14, 2004, Plaintiff published the Skyline photo on his website.  Plaintiff published the Kenwood photo on his website on November 23, 2002.  The website, the exclusive source for both photos, included the following notice: "Copyright © 2004 Chris Gregerson" underneath the Skyline photo.  Pl.'s Ex. 1.  Plaintiff published the following notice underneath the Kenwood photograph: "Copyright © 2002 Chris Gregerson."  Pl.'s Ex. 2.

6. The posted photos had been edited by Plaintiff to include a visible watermark with the following website: www.phototour.minneapolis.mn.us and a digital watermark.  Pl.'s Exs. 1-4.

7. A digital watermark is a digital code that is imperceptible to the eye but is readable by computers and software. Plaintiff used the software utility "exiftool" to extract the digital files embedded in his images. For each image, the embedded data included the copyright notice. Pl.'s Exs. 3, 4.

8. In May 2005, Plaintiff discovered the unauthorized use of his Skyline photo by Defendants in a Vilana Financial advertisement printed on the inside cover of the 2005-06 Qwest Dex phone book. Pl.'s Ex. 5. Plaintiff testified that Qwest printed approximately 500,000 copies of the phone book containing Defendants' advertisement. The image in the Qwest advertisement is cropped so that the watermark with Plaintiff's web address does not appear on the photo.

9. After discovering the Qwest advertisement, Plaintiff sent a letter to Defendants on June 6, 2005, demanding payment for the unauthorized use. Pl.'s Ex. 21. In Plaintiff's letter he estimated that the fair market value for use of the Skyline photo in the Qwest advertisement was $1,816. Id. Plaintiff explained that his policy was to triple the charge for unauthorized use of his photographs and that Defendants had until June 20, 2005, to pay him treble damages of $5,448. Id. Plaintiff further stated his policy would be to increase his fee to ten times the normal fair market value bringing the fee to $18,160 if Defendants failed to pay him by June 20, 2005. Id.

10. Plaintiff later discovered Defendants had used his photo on additional print and web advertisements. In each case the Skyline photo had been edited to remove the watermark with Plaintiff's web address. Plaintiff discovered that Defendants used his Skyline photo in an advertisement published in Zerkalo, a Russian-language newspaper with a press run of 5,000 copies of each issue, and in the Zerkalo website. Pl.'s Exs. 12, 13. Defendants used the Skyline

photo in a one-fourth page advertisement that appeared in six different issues of the newspaper. Defendants used the Skyline photo in two advertisements that appeared on the Zerkalo website. One advertisement was a one-fourth page advertisement that appeared on the website's homepage for six months. The other advertisement was a one-eighth page advertisement that also appeared on the website's homepage for six months. Plaintiff also discovered that Defendants used his Skyline photo in a one-eighth page online advertisement appearing on the website www.bestredyp.com. Pl.'s Ex. 15. This was a non-homepage advertisement that ran for one year.

    11.  In the course of discovery of the original infringement claims, Plaintiff discovered that Defendants used his Kenwood photo in a tri-fold brochure that also includes the Skyline photo. Pl.'s Ex. 17. Plaintiff estimates that Defendants printed 30,000 copies of the brochure displaying the Kenwood photo while Defendants contend that they printed only 1,000 copies.

    12.  Defendants contend there was no willful infringement of Plaintiff's copyright, because they believed they validly licensed the Skyline and Kenwood photos from an individual named "Michael Zubitskiy" ("Zubitskiy"). Vilenchik testified he met Zubitskiy in the sauna at the gym in early March 2004 and in that initial meeting commissioned Zubitskiy to take photographs of buildings in Minneapolis. Vilenchik claims he did not speak with or hear from Zubitskiy until Zubitskiy called to tell him that he was ready to present the pictures he had taken. Vilenchik testified that after Zubitskiy called him, Zubitskiy came to his office and produced a CD containing digital images of the Skyline and Kenwood photos. Vilenchik says he agreed to pay Zubitskiy for the photos and memorialized the agreement in writing. Under the terms of the written agreement dated March 19, 2004 (hereinafter, the 3/19/04 Agreement), Zubitskiy agreed to sell Defendants the photos for $850. Pl.'s Ex. 28. According to the agreement, "[a]ll photos

and images will become an intellectual property of Vilana Financial and cannot be resold." Id. The agreement is signed by Zubitskiy and notarized by Vladimir Kazaryan ("Kazaryan").  Id.

    13.  The Court finds there is no credible evidence to support a belief that "Zubitskiy"[1] exists or was the source of the controverted photos.  It is highly implausible that after a brief meeting in the sauna at the gym at which Zubitskiy did not provide contact information, references, or examples of his work, Defendants commissioned Zubitskiy to perform the photography service.  Defendants ask the Court to believe that Zubitskiy arrived at Defendants' office with the exact type of photos Defendants needed in the correct format and image resolution without so much as a phone call in the interim.  Further undermining Defendants' story is the fact no contact information for Zubitskiy was included on the 3/19/04 Agreement presented by Defendants and, despite Plaintiff's discovery requests, Defendants have failed to provide any information regarding the whereabouts or existence of Zubitskiy.  Despite Vilenchik's contention that the CD Zubitskiy provided contained several photos in addition to the Skyline and Kenwood photos, Vilenchik did not remember what images the other photographs contained, nor the specific number of photographs on the CD.

    14.  Vilenchik's testimony was inconsistent and full of contradictions.  Vilenchik explained that although he was in the sauna, he was able to give Zubitskiy his contact information without the benefit of paper and pen because his cell phone number was easy to recall.  However, Vilenchik's deposition testimony was that Zubitskiy called him at the following number:  612-963-2900.  Dep. Tr. at 24.  What would make this phone number

---

[1] Whether the change in spelling of "Zubitskiy" in the 3/19/04 Agreement to "Zubitsky" in Defendants' Proposed Findings of Fact is intentional or a typographical error will not be resolved here, but it is curious nonetheless.

particularly easy to recall eludes the Court.  In another contradiction, Vilenchik stated in his deposition that at Zubitskiy's request he paid cash, Dep. Tr. 28, but at trial he testified that he paid cash because Defendants did not have a company checkbook at the time of payment. Additionally, Vilenchik testified at trial that Zubitskiy took the photos in March, yet the conditions depicted in the Kenwood photograph show it was taken during the late spring or summer.

15.  Vilenchik's credibility was further undermined through the character testimony of several witnesses during trial.  Michael Walker, who worked for Defendants and had both business and personal contacts with Vilenchik, testified that Vilenchik has a reputation of being honest only when it serves him.  Similarly, Vladimir Sivriver, who has worked and socialized with Vilenchik, testified that Vilenchik has a reputation for being highly deceptive and saying one thing and then doing another.  Kazaryan also testified to Vilenchik's reputation for being dishonest.  Kazaryan, who has both a professional and personal relationship with Vilenchik, echoed Sivriver's testimony stating that Vilenchik has a bad reputation and is known for saying one thing and then doing something different.  Kazaryan believes Vilenchik exaggerates the truth.

16.  The testimony of Kazaryan is additional evidence that Zubitskiy is fictional and the 3/19/04 Agreement is fraudulent.  Kazaryan initially testified that he did not remember notarizing the 3/19/04 Agreement but later testified that he remembered some portion of it. When Kazaryan was asked whether Zubitskiy was present when he notarized his signature on the 3/19/04 Agreement, Kazaryan replied "apparently, yeah."  Further, when notified that the Commissioner of Commerce was prepared to formally investigate whether Kazaryan fraudulently notarized the 3/19/04 Agreement, Kazaryan voluntarily agreed to surrender his

notary seal.  Although both Kazaryan and Vilenchik testified to the existence of Zubitskiy, the Court finds their testimony lacking credibility.

17.  Defendants did not procure the Skyline and Kenwood photos from Zubitskiy, rather, they unlawfully procured them from Plaintiff's website.

18.  After Defendants refused to pay Plaintiff the amount requested in his June 6, 2005, letter, Plaintiff posted on his website an essay about the dispute and a picture of Vilenchik. Plaintiff has continued to use his website as a forum for discussing his dispute with Defendants. In addition to posting essays regarding the dispute, Plaintiff has maintained a comment section in which visitors to his website may post commentary.  The comments posted on Plaintiff's website included criticism of Defendants by Plaintiff, comments posted by visitors to the website, and comments by Vilenchik.

19.  Plaintiff's website comments include a detailed description and chronology of all the events relating to this litigation in an essay originally titled "Vilana Financial/Andrew Vilenchik Sued for Copyright Violation, Suspected of Fraud and Forgery."  Plaintiff requests: "If you have any information to share, you can email me at chris@cgstock.com.  You can also post a comment on this page, keeping in mind profanity and libel are not allowed."  Defs.' Ex. 5(A). Plaintiff also made the following comment:

> If you are currently considering obtaining a mortgage through Vilana Financial, Inc. I would encourage you to consider finding a mortgage elsewhere. If you are a customer of Vilana Financial and believe you have been a victim of illegal, fraudulent, or predatory loan practices, you can file a complaint with the **Minnesota Department of Commerce**, market assurance division . . . .

> Id.

20.  Visitors to Plaintiff's website posted numerous comments in response to Plaintiff's essay. Id.  While many of the comments related to the legal issues involved in the litigation,

many comments expressed personal opinions about Vilenchik and his businesses.  Id.  These comments included accusations that Vilenchik was affiliated with the Russian mafia, that his secretary was his girlfriend and a prostitute, and that Vilenchik is a thief.  Id.

21. Vilenchik also posted a comment on Plaintiff's website.  Id.  In his comment, he denies intentionally using Plaintiff's photo without authorization, offers his opinion regarding the litigation, and denies any wrongdoing.  Id.

## III.  CONCLUSIONS OF LAW

### A. Plaintiff's Damages

Plaintiff seeks actual damages for Defendants' use of his Skyline photo under 17 U.S.C. § 504(b).  Pl.'s 2d Am. Compl [Docket No. 119].  Plaintiff asserts Defendants' willful infringement of his copyright for the Kenwood photo entitles him to statutory damages up to $150,000 under 17 U.S.C. § 504(c)(2).  Plaintiff asserts that Defendants' willful removal of the electronic and visible watermarks from his photos is a violation of 17 U.S.C. § 1202, thus entitling him to damages under 17 U.S.C. § 1203.  Plaintiff also seeks his costs and attorney's fees under 17 U.S.C. § 505.

### 1. Actual Damages for the Skyline Photo

Plaintiff claims the fair market value for all uses of his Skyline photo by Defendants is $4,462.  Plaintiff, however, seeks ten times that amount because he published a policy of charging ten times the fair market value for unauthorized uses not paid for within ten days.  Pl.'s Proposed Findings and Conclusions ¶ 47 [Docket No. 149].

17 U.S.C. § 504(b), however, does not provide for a tenfold increase of punitive damages on the basis Plaintiff seeks.  Section 504(b) entitles the injured party to actual damages to compensate for the injury resulting from the infringement but also entitles the injured party to

the infringer's profits deriving from the infringement. "By stripping the infringer not only of the licensing fee but also of the profit generated as a result of the use of the infringed item, the law makes clear that there is no gain to be made from taking someone else's intellectual property without their consent." Walker v. Forbes, Inc., 28 F.3d 409, 412 (4th Cir. 1994). The Supreme Court has made very clear that the purpose behind the measure of damages set forth in § 504(b) is "to provide just compensation for the wrong, not to impose a penalty by giving to the copyright proprietor profits which are not attributable to the infringement." Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 399 (1940).

Plaintiff could have sought the profits Defendants derived from the infringement as damages but chose not to do so. Although Plaintiff included a request for this type of damage award in his First Amended Complaint [Docket No. 76], he abandoned his claim for profits in his Second Amended Complaint and did not pursue this theory of relief at trial. Accordingly, Plaintiff's damages are limited to actual damages—that is, the fair market value of Defendants' uses of the Skyline photo. To award Plaintiff ten times the fair market value of his pricing policy, would be to "impose a penalty by giving to the copyright proprietor profits which are not attributable to the infringement." Sheldon, 309 U.S. at 399.

Plaintiff estimates the fair market value of all of Defendants' uses of his Skyline photo to be $4,462; Defendants estimate the fair market value to be $1,756. At trial, Plaintiff testified regarding his calculation of the fair market value of Defendants' uses of the Skyline photo. Pl.'s Ex. 24. Plaintiff obtained price quotes from four other stock photography websites based on a license for "rights-managed photos (usage fees calculated on a case-by-case basis) for non-exclusive use of a photo similar to [the Skyline photo]." Id. In obtaining the price quotes, Plaintiff took into account the various factors that impact the licensing fee such as the size of the

image relative to the publication, the placement of the advertisement, and the number of copies printed or the amount of time the advertisement ran. Plaintiff determined the total fair market value each stock photography website would charge for all of Defendants' uses and determined that fair market value was the average of those estimates: $4,462. Id.

Defendants do not explain their calculation of the fair market value of their uses of the Skyline photo; however, they assert that their $1,756 estimate is consistent with the $1,816 demanded by Plaintiff in his June 6, 2005, letter. Plaintiff's letter, however, sought payment for Defendants' use of the Skyline photo in only the Qwest advertisement and does not reflect the fair market value of Defendants' additional uses of the Skyline Photo.

The Court awards Plaintiff $4,462 in actual damages under 17 U.S.C. § 504 for Defendants' infringing uses of the Skyline photo.

### 2. Statutory Damages for the Kenwood Photo

Plaintiff seeks damages for Defendants' use of the Kenwood photo under 17 U.S.C. § 504(c)(2). Section 504(c)(2) provides that "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." In determining the proper measure of statutory damages, the Court considers what is just in a particular case, the nature of the copyright, and the circumstances of the infringement. Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990). "Because awards of statutory damages serve both compensatory and punitive purposes, a plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant . . . in order to sanction and vindicate the statutory policy of

discouraging infringement." L.A. News Serv. v. Reuters Television Int'l, Ltd., 149 F.3d 987, 996 (9th Cir. 1998) (internal quotations and citations omitted).

The standard for determining whether the infringer's conduct was willful is "whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded that possibility." Hamil Am., Inc. v. GFI, 193 F.3d 92, 97 (2d Cir. 1999). "[E]ven in the absence of evidence establishing the infringer's actual knowledge of infringement, a plaintiff can still prove willfulness by proffering circumstantial evidence that gives rise to an inference of willful conduct." Island Software & Computer Serv. v. Microsoft Corp., 413 F.3d 257, 264 (2d Cir. 2005).

By March 2004, when Defendants contend they procured the photos from Zubitskiy, Plaintiff had obtained a copyright for both photos and Plaintiff's website contained content informing visitors that the photos were copyright protected. Having found that Defendants did not purchase Plaintiff's photos from Zubitskiy and that Plaintiff's website was the sole source for the Skyline and Kenwood photos, the Court concludes that Defendants obtained the photos from Plaintiff's website and thus, willfully infringed Plaintiff's copyright. In so finding, the Court awards Plaintiff $10,000 in statutory damages. This amount serves the interests of justice in acknowledging both the need to compensate Plaintiff and deter Defendants from future infringement. By unlawfully obtaining Plaintiff's photos from his website, where it was clear both that use of Plaintiff's photos was only available for a fee and that the photos were copyright protected, Defendants flagrantly disregarded Plaintiff's rights as a copyright owner.

### 3. Damages for Removal of Copyright Management Information

Plaintiff asserts that Defendants' willful removal of the digital and visible watermarks from his photos is a violation of 17 U.S.C. § 1202, thus entitling him to damages under 17

U.S.C. § 1203. 17 U.S.C. § 1202(b)(1), provides that "[n]o person shall, without the authority of the copyright owner or the law intentionally remove or alter any copyright management information." 17 U.S.C. § 1202(c) defines copyright management information as "information conveyed in connection with copies . . . , including in digital form" and provides a list of such information including "the name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright," § 1202(c)(3), and "[i]dentifying numbers or symbols referring to such information or links to such information," § 1202(c)(7).

The text of § 1202 defines copyright management information broadly and specifically includes information conveyed in digital form. Accordingly, while it is uncertain whether the visible watermark providing Plaintiff's website qualifies under § 1202(c)(7), Plaintiff's digitally embedded watermark does meet the definition set forth in § 1202(c)(3). The digitally embedded watermark, "(c) Chris Gregerson 2003" on the Skyline photo and "(c) Chris Gregerson 2002" on the Kenwood photo, includes Plaintiff's name and the notice of copyright. The plain text of § 1202(c)(3) unambiguously defines copyright management information to include protection for a digitally embedded watermark. However, even if the Court were to conclude that § 1202(c)'s definition of copyright management information was ambiguous and were to look to the legislative history and intent underlying § 1202(c), there is further support that a digitally embedded watermark constitutes copyright management information. In <u>IQ Group, Limited. v. Wiesner Publishing, LLC</u>, 409 F. Supp. 2d 587, 596 (D.N.J. 2006), Judge Joseph A. Greenaway, Jr., of the United States District Court for the District of New Jersey, engages in a lengthy evaluation of legislative history and intent and concludes that "Congress viewed a digital watermark as an example of copyright management information."

Defendants failed to produce the original Skyline photo used in the Qwest advertisement as requested in Plaintiff's first request for production.  Plaintiff submitted his first request for production before discovering that Defendants had also used his Kenwood photo and it does not appear that he submitted a request that Defendants produce the original Kenwood photo used in the tri-fold brochure.[2]  By failing to produce the original version of the Skyline photo used by Defendants in their various advertisements, Plaintiff was unable to determine whether Defendants removed the digitally embedded watermark.  Defendants, however, cannot benefit from this failure to produce.  "Where relevant evidence is within the control of a party to whose interest it would naturally be to produce it and he fails so to do, without satisfactory explanation, and produces no evidence or weaker evidence, an inference is justifiable that it would be unfavorable to him."  Goldie v. Cox, 130 F.2d 695, 719 (8th Cir. 1942).  The Court infers from Defendants' failure to produce the original electronic image used in its advertisements that the original image would have demonstrated that Defendants removed or altered Plaintiff's digitally embedded watermark in violation of § 1202(b)(1).

17 U.S.C. § 1203 provides that this Court may award Plaintiff damages upon finding that Defendants violated § 1202.  Plaintiff elected to recover statutory damages for Defendants' violation of § 1202 under § 1203(c)(3)(B). Pl.'s 2d Am. Compl.  Under § 1203(c)(3)(b),

---

[2] Plaintiff testified at trial that he included in his Second Interrogatories, Second Request for Production, and Second Request for Admissions, a request that Defendants produce the copies of his photos used by Defendants and the advertisements including the Kenwood photo in digital form.  A review of Defendants' Answers to Plaintiff's Second Interrogatories, Second Request for Production of Documents and Request for Admissions, Plaintiff's Exhibit 32, does not reveal such a request and Plaintiff did not offer into evidence the Second Interrogatories, Second Request for Production of Documents and Request for Admissions he submitted to Defendants.  Accordingly, there is no evidence of record that Plaintiff requested the digital copy of the Kenwood photo as possessed by Defendants and used in Defendants' brochure.

Plaintiff may recover "statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." The Court awards Plaintiff $5,000 for Defendants' willful removal of the digitally embedded watermark in the Skyline photo.

### 4. Attorney's Fees

Finally, Plaintiff seeks reasonable attorney's fees, costs, and disbursements under 17 U.S.C. § 505. No court has specifically addressed whether a pro se litigant may recover attorney's fees and costs under § 505; however, there is a general principle that pro se litigants are not entitled to attorney's fees otherwise authorized by fee-shifting statutes. See, e.g., Bond v. Blum, 317 F.3d 385, 398-99 (4th Cir. 2003); Gonzalez v. Kangas, 814 F.2d 1411 (9th Cir. 1987); Smith v. DeBartoli, 769 F.2d 451 (7th Cir. 1985); Owens-El v. Robinson, 694 F.2d 941 (3d Cir. 1982); see also McDermott v. Royal, 123 Fed. Appx. 241, 242 (8th Cir. 2004) (stating that "a pro se litigant is not entitled to attorneys fees under section 1988"); White v. Armontrout, 29 F.3d 357, 361-362 (8th Cir. 1994) (stating that a litigant was not entitled to attorney's fees because of his pro se status); McMillan v. Chief Judge, Circuit Court of Greene County, 711 F.2d 108, 109 (8th Cir. 1983) (stating "Because the plaintiffs brought this action pro se and in forma pauperis, however, they did not incur any [costs and attorney's fees]"). Accordingly, Plaintiff's request for attorney's fees is denied.

### B. Defendants' Counterclaims

Defendants assert counterclaims of deceptive trade practices, interference with contractual and business relationships, and invasion of privacy by appropriation of Defendants' name and Vilenchik's likeness. All of Defendants' claims arise from the comments made by Plaintiff on his website, the comments made by visitors to his website, and Plaintiff's use of Defendants' name and Vilenchik's picture on his website.

As it relates to all of the individual counterclaims, Plaintiff contends that he is not liable for the comments made by third parties under the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c). Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," § 230(c)(1), and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," § 230(e)(3). Although the Eighth Circuit has yet to address the application of § 230, "[t]he majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" Almeida v. Amazon.com, Inc., 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting Zeran v. Am. Online, Inc., 129 F.3d 327, 331 (4th Cir. 1997)); see also Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102 (9th Cir. 2007); Universal Commc'n Sys., Inc. v. Zwebner, 478 F.3d 413 (1st Cir. 2007).

Plaintiff, as an operator of a website where users can post comments, is a provider of an interactive computer service. See Universal Commc'n Sys., 478 F.3d at 419; Carafano v. Metrosplash.com Inc., 339 F.3d 1119, 1123 (9th Cir. 2003); Faegre & Benson, LLP v. Purdy, 367 F. Supp. 2d 1238, 1249 (D. Minn. 2005). The third-party comments posted on Plaintiff's website are "information provided by another information content provider." § 230(c)(1). Section 230 defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet

or any other interactive computer service." § 230(f)(3).  Accordingly, Plaintiff is not liable for the third-party comments posted on his website.[3]

Plaintiff is liable for only his own comments on his website.  See Universal Commc'n Sys, 478 F.3d at 419 (stating "immunity only applies when the information that forms the basis for the state law claims has been provided by '*another* information content provider.'  Thus an interactive computer service provider remains liable for its own speech") (internal citations omitted); see also Faegre & Benson, 367 F. Supp. 2d at 1249 (stating that § 230 "immunizes web site operators from liability unless they themselves post the defamatory comments").  Defendants' counterclaims will be analyzed by a review of Plaintiff's comments.

### 1. Deceptive Trade Practices

Minn. Stat. § 325D.44, subd. 1, states in relevant part:

> A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: (8) disparages the goods, services, or business of another by false or misleading representation of fact; . . . or (13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Defendants assert that by entitling Defendants' essay with the words "Suspected of Fraud and Forgery" and by making the following comment, Plaintiff suggested that Defendants engaged in fraud, illegal activity, and predatory lending practices:

> If you are currently considering obtaining a mortgage through Vilana Financial, Inc. I would encourage you to consider finding a mortgage elsewhere.  If you are a customer of Vilana Financial and believe you have been a victim of illegal,

---

[3] Section 230 immunity extends even after Plaintiff was made aware of Defendants' objections to the comments posted by third parties.  Universal Commc'n Sys., 478 F.3d at 420 ("It is, by now, well established that notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech. . . . Section 230 immunity applies even after notice of the potentially unlawful nature of the third-party content.").

> fraudulent, or predatory loan practices, you can file a complaint with the **Minnesota Department of Commerce**, market assurance division . . . .

Defs.' Ex. 5(A). Because this statement is not a false or misleading representation of fact, but rather a statement of opinion, the question is whether Plaintiff's comment created a likelihood of confusion or misunderstanding regarding Defendants' goods or services. The Court finds that because this statement is so clearly a statement regarding Plaintiff's opinion, and Plaintiff does not represent to have any knowledge regarding Defendants' goods or services, Plaintiff's statement did not create any confusion or misunderstanding regarding Defendants' goods or services. Similarly, the statement that Defendants were suspected of fraud and forgery was a true statement of fact reflecting Plaintiff's belief that Defendants fabricated Zubitskiy and forged his signature on the 3/19/04 Agreement, which was also fraudulently notarized. Accordingly, Plaintiff did not engage in deceptive trade practices in violation of Minn. Stat. § 325D.44, subd. 1.

### 2. Interference with Contractual Relationship

One is not liable for intentionally interfering with an existing or prospective contractual relationship where that person has made a truthful representation. Sorenson v. Chevrolet Motor Co., 214 N.W. 754, 757 (Minn. 1927) (finding that a salesman who made a truthful representation did not tortiously interfere with a contractual relation); Glass Serv. Co., Inc. v. State Farm Mut. Auto. Ins. Co., 530 N.W.2d 867, 871 (Minn. Ct. App. 1995) (stating that there is no liability for tortious interference with prospective contractual relation "on the part of one who merely gives truthful information to another").

Defendants did not identify any specific comments by Plaintiff that were false. Accordingly, Defendants have not shown that Plaintiff is liable for interference with existing or prospective contractual relationships.

### 3. Appropriation

Defendants contend that Plaintiff is liable for invasion of privacy by appropriation of Defendants' name and Vilenchik's photograph on his website. "Appropriation protects an individual's identity and is committed when one 'appropriates to his own use or benefit the name or likeness of another.'" Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998). The Restatement describes the ways in which an individual can invade another's privacy:

> The common form of invasion of privacy under the rule here stated is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose. Apart from statute, however, the rule stated is not limited to commercial appropriation. It applies also when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one.

Restatement (Second) of Torts § 625C cmt. b. Defendants contend that Plaintiff's postings regarding the dispute caused the website to experience increased traffic constituting a benefit to Plaintiff. Defendants, however, failed to prove that Plaintiff's website experienced any increase in traffic whatsoever. Even assuming they had, Defendants presented no evidence demonstrating a causal connection between Plaintiff's use of Defendants' name and Vilenchik's picture and an increase in traffic to Plaintiff's website. Accordingly, Defendants failed to prove that Plaintiff appropriated their name and likeness for his benefit.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  The Court finds in favor of Plaintiff Chris Gregerson and awards him $4,462 in actual damages for Defendants' infringement of the Skyline photograph, $10,000 in statutory damages for Defendants' infringement of the Kenwood photograph, and $5,000 for Defendants' removal of Plaintiff's copyright management information.

2.  Plaintiff's claim for attorney's fees and costs is **DENIED**.

3.  Defendants' counterclaims against Plaintiff are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:


     s/Ann D. Montgomery     
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: February 15, 2008.